*Tagged Opinion*



**ORDERED in the Southern District of Florida on June 21, 2017.**

**Laurel M. Isicoff**
**Chief United States Bankruptcy Judge**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In re:

LEONIDAS ORTEGA T.,                    Case No. 15-20614-LMI
                                       Chapter 7
      Debtor.

_____

INTERAMERICAN ASSET
MANAGEMENT FUND LIMITED,

      Plaintiff,                    Adv. Proc. No. 16-01197-LMI

v.

LEONIDAS ORTEGA T.,

        Defendant.

_____

**AMENDED MEMORANDUM OPINION AND ORDER GRANTING SUMMARY
JUDGMENT IN FAVOR OF DEFENDANT AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND DENYING
<u>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>[1]**

This matter came before me for a hearing on January 31, 2017, on the Motion for Summary Judgment of the Defendant Leonidas Ortega T (the "Debtor" or the "Defendant") (ECF #50) (the "Debtor's Motion") and the Motion for Partial Summary Judgment of the Plaintiff Interamerican Asset Management Fund Limited ("IAMF" or the "Plaintiff") (ECF #51) (the "Plaintiff's Motion"). At issue is whether the Plaintiff may rely on a ruling issued by the Judicial Committee of Her Majesty's Privy Council (the "Privy Council") in the United Kingdom in determining whether the Plaintiff's judgment in the amount of US$191,953,517.50 (later increased by US$381,886,435.00 due to the inclusion of compound interest) ( the "Judgment") is non-dischargeable under either 11 U.S.C. §523(a)(2) or 11 U.S.C. §523(a)(6) or, conversely, whether the Debtor may rely on rulings of the lower courts to dispose of these claims in Debtor's favor.[2]  For the reasons set forth below, both the Debtor's Motion and the Plaintiff's Motion are denied; however, summary judgment is granted in favor of the Debtor on Counts I and III of the Complaint.

## I.    BACKGROUND[3]

The Debtor is a member of the Ortega Trujillo family, a prominent family in the Ecuadorian business world. *See* Damages Judgment ¶ 10. The Debtor and his brothers, Luis and Jaime Ortega Trujillo (two of the other Respondents[4] in the Judgment), were three of the principal shareholding owners and officers of Conticorp, an Ecuadorian company. *Id.* ¶ 1. Conticorp owned Grupo

---

[1] Amended to correct a typo on page 2.
[2] There are actually two judgments comprised of the underlying damages award in the amount of approximately US$191 million (the "Damages Judgment") and a separate award for pre- and post-judgment compound interest (the "Interest Judgment").
[3] These facts are taken from the Damages Judgment as indicated.
[4] "Respondents," as used herein, collectively refers to the Debtor, Jaime Ortega Trujillo, and Luis Ortega Trujillo.

Financiero Conticorp SA ("GFC"), whose principal subsidiary was a large commercial bank in Ecuador called Banco Continental SA ("Banco Continental"). *Id.* Banco Continental in turn owned Banco Continental Overseas NV ("BCO Curacao"), incorporated in the Netherlands Antilles. *Id.* IAMF was a wholly owned subsidiary of BCO Curacao. *See id.* ¶ 14. At all relevant times, the Debtor was executive president of Conticorp, GFC, and Banco Continental. *Id.* ¶ 10.

A.    **Establishment and Creation of IAMF**

Over the years, the Respondents and their affiliated companies borrowed substantial sums from BCO Curacao.  ¶ 2. In 1994, regulations in the Netherlands Antilles required BCO Curacao to reduce its related-party lending. *Id.* ¶ 14. In response, the Respondents came up with a plan under which BCO Curacao's loan portfolio would be transferred to a Bahamian mutual fund and where BCO Curacao would acquire participating shares in that fund. *Id.* The Respondents arranged for the incorporation of IAMF, and BCO Curacao transferred its portfolio of related-party loans to IAMF. *Id.* ¶ 14. Ansbacher (Bahamas) Limited ("Ansbacher") was appointed as IAMF's administrator and Michael Taylor ("Taylor") as its sole director and investment adviser. *Id.* ¶ 13.

B.    **The Transactions**

In the mid-1990s, Ecuador underwent a financial crisis. In August 1995, Banco Continental and BCO Curacao both were experiencing financial difficulties, and someone named Carlos Baquerizo introduced the Respondents to the concept of using global depository receipts representing equity shares of GFC (the "GDRs")[5] as a means of raising capital. *Id.* ¶¶ 70–71. At this point, to receive a loan from the Central Bank of Ecuador, the Monetary Board, which governs that bank, required Banco Continental to be "overseen by the Banking Superintendence," and to take steps to "overcome its problem of liquidity" and focus on the accelerating "its process of

---

[5] As the Privy Council explained, "GDRs are a means of making shares more marketable internationally. An institution is engaged to hold a company's shares and to issue GDRs guaranteeing title therein to purchasers." Damages Judgment ¶ 15.

opening up capital that could allow it to attain new resources in line with the restructuring of its liabilities…" ¶ 77. Around this time, the Respondents made the decision to sell the GDRs to IAMF in exchange for IAMF's portfolio of lending to Conticorp and Conticorp-related companies. *Id.* ¶ 123.

The Respondents instructed Taylor to cause IAMF to purchase the GDRs in three transactions: the first in December 1995, the second in January 1996, and the third in March 1996 ("First Transaction," "Second Transaction," "Third Transaction," respectively, and collectively, the "Transactions"). *Id.* ¶¶ 16–18, 77. Through the Transactions, IAMF exchanged all of its assets, including cash, portfolios of loans, and shareholdings for the GDRs. *Id.* ¶¶ 16–18. However, the GDRs could not be valued "in any way commensurate with that of the cash, loans and shares which IAMF was surrendering and the risks it was incurring by accepting the GDRs and shares in place of its previous assets." *Id.* ¶ 2.

Ultimately, despite a bailout loan from the government of Ecuador, both Banco Continental and BCO Curacao failed and were forced into liquidation.

### C.    The Underlying Litigation

IAMF filed suit against the Debtor in 1996. *Id.* ¶ 113. Initially, IAMF sought recovery under several theories, including dishonest assistance, fraud, deceit, and fraudulent conveyance. The Bahamian trial court and first appellate court (collectively "the lower courts") decided in favor of the Debtor under each theory of recovery. IAMF appealed those rulings to the Privy Council, however the appeal only sought reconsideration of the ruling on the claims of dishonest assistance; the other rulings of the lower courts were left unchallenged.

Dishonest assistance, also called "knowing assistance" is a type of third-party liability that exists under UK trust law.[6] Any person who assists in a breach of a fiduciary duty will personally be liable to the beneficiaries of that fiduciary duty for any loss caused by that breach of duty if the person has been found to have acted dishonestly. *See, e.g.*, *Royal Brunei Airlines Sdn Bhd v Tan*, B.C.C. 899 (1995).

In analyzing whether a party has rendered dishonest assistance, courts examine whether: (1) there was a breach of trust or fiduciary duty by someone other than the third party; (2) the third party procured or aided in the subject misfeasance or breach; and (3) the third party did so with a dishonest state of mind. *See Barlow Clowes Int'l Ltd. v Eurotrust Int'l Ltd.*, 1 W.L.R. 1476 (2006); *Twinsectra Ltd. v Yardley*, 2 A.C. 164 (2002); *Royal Brunei*, B.C.C. at 899.

### D.    Dishonest assistance is judged by an objective standard not a subjective standard

In reversing the appellate court's decision that the Debtor was not liable to IAMF for dishonest assistance, the Privy Council held that dishonest assistance must be viewed from an objective standard, not the subjective standard applied by the lower courts.  The Privy Council not only ruled that the two lower courts had applied the wrong standard to the dishonest assistance claim, the Privy Council then took what it recognized as an extraordinary step, and made its own findings based on the evidence from the trial court proceeding, in determining that, under an *objective* standard, the Debtor was liable to IAMF for dishonest assistance.  The Privy Council then entered the Damages Judgment.

### E.    The Collateral Estoppel effect of the Damages Judgment

---

[6] It is one of two common law liabilities established by the English Court of Chancery in *Barnes v Addy*, LR 9 Ch. App. 244 (1874). The *Barnes* court held that "strangers are not to be made constructive trustees merely because they act as agents of trustees in transactions … unless those agents received and become chargeable with some part of the trust property, or unless they assist with knowledge in a dishonest and fraudulent design on the part of the trustees." *Barnes*, 9 Ch. App. a 244.

The Plaintiff filed a complaint seeking, in Counts I and III, a determination that the Judgment is non-dischargeable under 11 U.S.C. §523(a)(2) and 11 U.S.C. §523(a)(6), relying solely on the *res judicata* effect of the Damages Judgment[7].  The Debtor seeks summary judgment arguing that the rulings of the lower courts, review of which the Plaintiff did not seek, collaterally estop the Plaintiff from seeking relief under sections 523(a)(2) and (a)(6) because the trial court, affirmed where applicable, by the intermediate appellate court, specifically found that the Debtor had not committed fraud.  The Debtor argues that the issues on the claims that the Plaintiff did not appeal all resolve the issues in favor of the Debtor with respect to sections 523(a)(2) and (a)(6). The Debtor also argues that the Damages Judgment does not support the relief the Plaintiff seeks.

The Plaintiff, in turn, argues that not only does the Damages Judgment on dishonest assistance entitle it to relief, but also that the factual findings of the Privy Council, when applied to the elements of sections 523(a)(2) and (a)(6), support the relief sought.  In other words, the Plaintiff argues that I should give collateral estoppel effect to the factual findings in the Damages Judgment irrespective of whether the elements of dishonest assistance are the same as those for relief under sections 523(a)(2) and (a)(6).

## II.    SUMMARY JUDGMENT IS APPROPRIATE

Summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rules 7056 and 9014 of the Federal Rules of Bankruptcy Procedure is appropriate when there exists no genuine issue of material fact and a decision may be rendered as a matter of law. The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If there are no material facts in dispute, and only a purely legal

---

[7] In the Plaintiff's Motion, the Plaintiff apparently recognized that only collateral estoppel, and not *res judicata*, is a basis for preclusion in a non-dischargeability action, and modified the relief sought accordingly.  *See generally* 4 COLLIER ON BANKRUPTCY, ¶523.06 (Alan N. Resnick & Henry J. Sommers eds., 16th ed. 2017).

question remains to be decided by the court, then granting summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Both parties agree that there is no genuine issue of material fact, as the Privy Council set forth in the Damages Judgment the facts surrounding the Debtor's actions upon which its ruling was based, and upon which the Plaintiff relies. I need only decide questions of law, namely (1) whether the Judgment of the Privy Council or the lower courts should be recognized by me under principles of comity, and if so, (2) whether the factual findings of the Privy Council or the lower courts should be given collateral estoppel effect with respect to the relief sought in Counts I and III of the Complaint. The second question requires me to undertake an analysis of the relevant laws of the United States and United Kingdom and determine whether an identical issue critical to this case has been fully litigated by another court such that the facts found by the Privy Council or the lower courts render the Judgment non-dischargeable under U.S. bankruptcy law. Statutory interpretation is a matter of law appropriate for resolution on summary judgment. *Smith v. BellSouth Telecomm., Inc.*, 273 F.3d 1303 (11th Cir. 2001).

## III. THE JUDGMENT SHOULD BE RECOGNIZED UNDER THE DOCTRINE OF COMITY

Before determining whether to give preclusive effect to the judgment of a foreign court, the reviewing U.S. court must first decide whether it will recognize the judgment under the doctrine of comity. Comity is a doctrine of deference based on respect for the judicial decisions of foreign sovereigns (or of any of the domestic fifty states, which are quasi-sovereigns).

As I recently noted, when determining whether it is appropriate to give comity to a foreign judgment, the U.S. court "must evaluate: (1) whether the foreign court was competent and used proceedings consistent with civilized jurisprudence; (2) whether the judgment was rendered by fraud; (3) whether the foreign judgment was prejudicial because it violated

American public policy notions of what is decent and just; and (4) whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings." *In re Neves,* 2017 WL 1709581 at \*5 (Bankr. S.D. Fla. 2017) (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004)).  When the foreign judiciary is respected, as in the case of the United Kingdom's judiciary, and where the rule on which the finding sought to be given preclusive effect is based does not offend a strong U.S. policy, federal courts should defer to that finding. *See GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1030 (11th Cir. 2014); *see also In re Mouttet*, 493 B.R. 640, 655 (Bankr. S.D. Fla. 2013).  Although the Privy Council did take the extraordinary step of making factual findings, a procedure not generally employed in the United States courts,[8] the Debtor has not made any convincing argument that this extraordinary relief disqualifies the Damages Judgment from recognition under comity.

However, notwithstanding that the Debtor seeks to rely on the collateral estoppel effect of the lower court rulings, the Debtor has not asked me to give comity to those judgments, nor does such relief appear appropriate since those judgments have been superseded by the Damages Judgment.  However, even if the Debtor had asked me to give comity to these judgments such recognition would be meaningless since, as discussed below, under applicable law, the factual findings of those judgments have no collateral estoppel effect.

## IV.    COLLATERAL ESTOPPEL AND THE DISCHARGE OF THE IAMF CLAIMS

Collateral estoppel clearly applies in discharge proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). "While collateral estoppel may bar a bankruptcy court from relitigating factual issues previously decided in state court, the ultimate issue of dischargeability is a legal

---

[8] There are some circumstances where appellate courts may make factual findings. For example, appellate courts may make factual findings in reviews of *Batson* claims alleging that an attorney systematically excluded a specific race when exercising preemptory challenges.  *See Jones v. Ryan*, 987 F.2d 960, 966 (3d Cir. 1993); *Esquivel v. McCotter*, 791 F.2d 350, 351 (5th Cir. 1986).

question to be addressed by the bankruptcy court in the exercise of its jurisdiction." *Hartnett v. Mustelier (In re Hartnett)*, 330 B.R. 823, 829 (Bankr. S.D. Fla. 2005). In the context of an action brought pursuant 11 U.S.C. § 523(a), "a bankruptcy court could properly give collateral estoppel effect to those elements of the claim that are identical to the elements required for discharge and which were actually litigated in the prior action." *Grogan*, 498 U.S. at 284.

Both the Plaintiff and the Debtor agree that I must apply the laws of the United States ("U.S. law") to determine the preclusive effect of the Damages Judgment.  Ordinarily the preclusive effect of a judicial order is determined under the law of the jurisdiction that issued the order.  *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80–81 (1984); *Czarniecki v. City of Chicago*, 633 F.3d 545, 548 n.3 (7th Cir. 2011).  However, federal courts generally apply U.S. law in determining whether to recognize the judgment of a foreign nation. *See Diorinou v. Mezitis*, 237 F.3d 133, 139–40 (2d Cir. 2001); *Alfadda v. Fenn*, 966 F. Supp. 1317, 1329 (S.D.N.Y. 1997) (reviewing conflicting cases and concluding that a federal court should normally apply U.S. law to determine the preclusive effect of a foreign judgment); *Hurst v. Socialist People's Libyan Arab Jamahiriya*, 474 F. Supp. 2d 19, 33 (D.C. Cir. 2007) (agreeing with the majority of U.S. courts that have addressed the issue and concluding that it is appropriate to apply federal standards in determining whether and to what extent to give preclusive effect to a judgment of the United Kingdom).

I adopt the majority position that the choice of law for issue preclusion with respect to a foreign judgment should be U.S. law, especially where the nature of the claim arises purely from federal bankruptcy law, such as an exception from discharge.

Federal collateral estoppel law applies where: "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated

was necessary to support a valid and final judgment on the merits." *In re PCH Associates*, 949 F.2d 585, 593 (2d Cir.1991). Based on this test neither the Defendant nor the Plaintiff is entitled to rely on collateral estoppel in support of the relief they seek in their respective motions.

The Debtor asks me to rely on the findings of fact and rulings of the lower courts, which findings and rulings were not subject of the IAMF appeal. IAMF argues that collateral estoppel is not available to any judgment that has been reversed, whatever the basis for the reversal, and that as the highest court of appeal for cases decided under the laws of the United Kingdom's Commonwealth countries, judgments reversed by the Privy Council lose all conclusive effect. Although IAMF did not cite cases from the United Kingdom to support this statement, I agree with IAMF because under U.S. rules of collateral estoppel "[w]here the prior judgment, or any part thereof, relied upon by a subsequent court has been reversed, the defense of collateral estoppel evaporates." *Erebia v. Chrysler Plastic Prod. Corp.*, 891 F.2d 1212, 1215 (6th Cir. 1989) (citing *Butler v. Eaton*, 141 U.S. 240, 244 (1891)). Thus, I will not give collateral estoppel effect to the judgments of the lower courts.[9]

IAMF seeks a determination that the Judgment is non-dischargeable pursuant to sections 523(a)(2) and 523(a)(6). Sections 523(a)(2) and 523(a)(6) provide that a debtor cannot discharge a debt obtained by actual fraud or arising from a willful and malicious injury by the debtor. To resolve whether the Plaintiff is entitled to judgment on Counts I and III of the Complaint, I must determine whether each of the elements of collateral estoppel have been met with respect to whether the Debtor: (a) committed actual fraud giving rise to the debt or (b) willfully and maliciously injured IAMF, the consequence of either meaning the Judgment is not dischargeable. Conversely, should I rule in favor of the Debtor, then because Counts I and III of the Complaint

---

[9] This does not mean that what the Privy Council did not say about the lower court rulings may provide some context to what the Privy Council ruled in the Damages Judgment.

relies solely on the preclusive effect of the Damages Judgment, the Debtor is entitled to summary judgment in his favor on these counts.[10]

The answer lies in the Damages Judgment. This case presents the somewhat unusual circumstance of considering the collateral estoppel effect of an appellate court judgment.

### A.    Dishonest Assistance does not require a finding of actual fraud, nor did the Privy Council make a finding of actual fraud.

IAMF argues that because dishonest assistance is classified as a type of civil fraud under the law of the United Kingdom, the Damages Judgment necessarily included a finding of fraud, notwithstanding, as IAMF concedes, the Privy Council never used the word "fraud" to describe the Debtor's actions.

In reversing the lower courts' ruling that the Debtor was not liable for dishonest assistance because the Debtor did not intend to harm IAMF, the Privy Council wrote

> It is common ground that whether the respondents procured or assisted in any breach of trust in a manner which the law will regard as dishonest must be assessed in the light of the conduct to which the respondents were party and their actual state of knowledge at the relevant times. But it also common ground that, if objectively no honest person would in that light have acted as they did, ***it is unnecessary to show that the respondents actually recognised that what they were doing was dishonest***: *Barlow Clowes International Ltd v Eurotrust International Ltd* [2005] UKPC 37, [2006] 1 WLR 1476, para 10. There, the Board affirmed the correctness of a judge's direction that:

>> "... Dishonest assistance requires a dishonest state of mind on the part of the person who assists in a breach of trust. Such a state of mind may consist in knowledge that the transaction is one in which he cannot honestly participate (for example, a misappropriation of other people's money), or it may consist in suspicion combined with a conscious decision not to make inquiries which might result in knowledge: see *Manifest Shipping Co Ltd v Uni-Polaris Insurance Co Ltd* [2001] UKHL  1, [2003] 1 AC 469.

---

[10] Summary judgment may be rendered in favor of an opposing party even if that party has not made a formal cross-motion. *See Massey v. Congress Life Ins. Co.*, 116 F.3d 1414, 1417 (11th Cir. 1997) (stating that a court *may sua sponte* grant summary judgment in favor of a nonmoving party so long as the court provided notice to the parties). Although I have denied the Debtor's Motion, the Plaintiff was clearly on notice that summary judgment in favor of the Debtor was a possibility.

> Although a dishonest state of mind is a subjective mental state, ***the standard by which the law determines whether it is dishonest is objective***. If by ordinary standards a defendant's mental state would be characterised as dishonest, it is irrelevant that the defendant judges by different standards."

In short, a defendant must be conscious of those elements of the transaction which make his participation transgress ordinary standards of honest behaviour, but there is no requirement that he should have thought about what those standards were *(Barlow Clowes,* paras 15 and 16).

Damages Judgment ¶9 (emphasis added).

A debt for money is not dischargeable under section 523(a)(2)(A) if the money was "obtained by - (A) false pretense, a false representation or actual fraud." The traditional elements of non-dischargeable fraud under section 523(a)(2)(A) are:

> (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.

*In re Firestone*, 26 B.R. 706, 713 (Bankr. S.D. Fla. 1982) (quoting *Sweet v. Ritter Fin. Co.*, 263 F. Supp. 540, 543 (W.D. Va. 1967)).

IAMF argues that notwithstanding that section 523(a)(2) specifically requires a finding of intent to defraud, under a recent Supreme Court case, "'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation" or reliance upon that representation by the creditor. *Husky Int'l Elec. v. Ritz* 136 S. Ct. 1581, 1586 (2016). In *Husky International,* the Supreme Court resolved a circuit split about whether a fraudulent conveyance could constitute "actual fraud" under section 523(a)(2)(A), even where no false statements were made or relied upon when the debt was created. The Supreme Court interpreted the term "actual fraud" broadly and held that more "traditional forms of fraud" like fraudulent conveyances of property, *could* be encompassed by section 523(a)(2)(A). However, the Supreme Court also made clear that "[actual fraud] denotes any fraud that

'involve[es] moral turpitude or intentional wrong.' . . . Thus, anything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'" *Id.* at 1586.

The Privy Council clearly found that the Debtor and the other Respondents acted dishonestly insofar as no reasonable person could have honestly believed that the three transactions would be of any benefit to IAMF and, indeed, gave no consideration to whether and to what extent the transactions could harm IAMF.  However, that is not the same as finding that the Debtor committed any type of fraud; the word "fraud" never appears in the Damages Judgment.  In fact, the Privy Council made a point of not reviewing the lower courts' findings regarding fraud, because the Privy Council focused on the only issue raised by IAMF in its final appeal - that is, fraud or not, deceit or not, the Respondents were liable under the concept of dishonest assistance, which, as the Privy Council stated, in reversing the lower courts, did not require IAMF to show that the Respondents, including the  Debtor  "***actually recognised that what they were doing was dishonest***".  Thus, *Husky* does not help IAMF's argument.

IAMF also cites to various factual findings of the Privy Council included in the Damages Judgment, which findings, they argue, show that the Privy Council found that the Debtor acted with actual intent to defraud.  I disagree.  When making the factual findings highlighted by IAMF, the Privy Council found those facts supported the objective standard applied in the Damages Judgment.  The Privy Council specifically ruled that subjective intent, the standard applied by the lower courts considering those very same facts, was not necessary to hold the Debtor liable for the fiduciary breaches of Mr. Taylor.  And it is that actual intent, not objective intent, that is required to except a debt from discharge under section 523(a)(2)(A).

Because the elements of dishonest assistance, in the Privy Council's own words, do not require a finding that the Debtor actually intended to do wrong, but rather that no honest person could have believed otherwise, the issues considered by the Privy Council and the issues necessary

13

to consider the section 523(a)(6) claim are not identical.  Further, there are no findings of the Privy Council of actual fraud or intent to defraud.  Therefore collateral estoppel does not apply to Plaintiff's claims under section 523(a)(2)(A) and the Plaintiff is not entitled to summary judgment on Count I of the Complaint.

### B.    Dishonest Assistance does not require resolution of the same issues as a claim under 11 U.S.C. § 523(a)(6)

A debt is not dischargeable under section 523(a)(6) for "willful and malicious injury by the debtor to another entity".   In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the Supreme Court clarified what is meant by "willful and malicious injury" for purposes of section 523(a)(6). In rejecting the analysis in those cases that held 'willful and malicious' encompasses intentional acts the Supreme Court wrote "nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Id.* at 61.

The Eleventh Circuit has held that "[a] debtor is responsible for a 'willful' injury when he or she commits an intentional act the purpose of which is to cause injury or which is substantially certain to cause injury." *Kane v. Stewart Tilghman Fox & Bianchi Pa (In re Kane)*, 755 F.3d 1285, 1293 (11th Cir. 2014) (internal quotation omitted). When financial harms are alleged, it must be shown that the debtor "actually knew, at the time of the intentional act, that injury was substantially certain to result." *Petroleum Realty I, LLC v. McCravy (In re McCravy)*, 2015 WL 3916811, at *9 (Bankr. S.D. Fla. 2015).

The parties disagree whether the substantial certainty required for willfulness is an objective or subjective standard.   There is a circuit spilt on the question that the Eleventh Circuit has not yet decided.  *See In re Kane,* 755 F.3d at 1293 ("Our sister circuits have disagreed about whether the term "substantial certainty" is a subjective standard, requiring a creditor to prove that a debtor actually knew that the act was substantially certain to injure the creditor, or an objective

14

standard, requiring a creditor to show only that a debtor's act was in fact substantially certain to cause injury.") IAMF argues that this standard is *objective*, consistent with the standard for dishonest assistance, and thus collateral estoppel does not require that the Privy Council found that the Debtor actually intended to cause the specific harm to IAMF, or that the Debtor knew that his intentional behavior was certain or substantially certain to cause injury to IAMF.  Alternatively, IAMF argues that even under a subjective standard, the Privy Council made sufficient findings that the Debtor intended to cause harm, or that he was substantially certain that injury to IAMF would result.   The Debtor counters that the proper standard for a willful and malicious injury under section 523(a)(6) is a *subjective* standard and that there is nothing in the Damages Judgment where the Privy Council found that the Debtor intended to cause harm to IAMF or that the Debtor was certain or substantially certain that his actions would result in injury to IAMF.

I hold that, in determining the non-dischargeability of a section 523(a)(6) claim based upon willful and malicious injury, the subjective standard is the correct standard to apply. "In the financial tort cases, because of the somewhat attenuated relationship between the defendant's act and the resulting harm, a **purely objective substantial certainty analysis would bring the court dangerously close to the recklessness standard**. In such cases, using a subjective standard for substantial certainty avoids this risk." *Drewes v. Levin (In re Levin)*, 434 B.R. 910, 920 (Bankr. S.D. Fla. 2010) (emphasis added).  The findings of the Privy Council do not support a subjective standard.   Indeed, the Privy Council went to pains to highlight that the Debtor's intent was irrelevant to its finding of dishonest assistance, that the Debtor just didn't give any thought to whether IAMF would be harmed, not that the Debtor knew with substantial certainty that IAMF would be harmed.   Although the objective standard may have been appropriate for the determination under English law by the Privy Council that the Debtor provided dishonest assistance, it is the subjective standard that is applicable to a determination whether the judgment

15

for dishonest assistance is non-dischargeable as a willful and malicious injury. Because the issues decided by the Privy Council are not the same as those necessary to find a claim is non-dischargeable under section 523(a)(6), and the findings of the Privy Council are actually inconsistent with the relief the Plaintiff seeks under Count III, the Plaintiff is not entitled to summary judgment on Count III of the Complaint.[11]

## V.    CONCLUSION

"Exceptions to discharge are construed strictly against the complaining party and liberally in favor of the debtor in order to effectuate the fresh start policy that is the primary purpose of the Bankruptcy Code." *Rutland v. Petersen (In re Petersen),* 323 B.R. 512, 516 (Bankr. N.D. Fla. 2005).  The Debtor and his brothers are not boy scouts, and they were found to have contributed to Mr. Taylor's breach of fiduciary duty to IAMF, which contribution, under the laws of the United Kingdom, makes each of them liable to IAMF for the harm caused.  However, that liability does not translate to non-dischargeability under the United States Bankruptcy Code, when the elements of liability are not the same.

Having failed to demonstrate that the Damages Judgement entitles the Plaintiff to a judgment that the Debtor committed actual fraud or that the Debtor knew that the act was substantially certain to injure the Plaintiff, it is ORDERED that the Plaintiff's Motion is DENIED.

It is further ORDERED that the Debtor's Motion is DENIED.  Nonetheless, Summary Judgment is granted in favor of the Debtor with respect to Counts I and III of the Complaint.

---

[11] It is important to understand that I am ruling on the relief sought by the Plaintiff in the Complaint and in the Plaintiff's Motion, which relief is based solely on the preclusive effect of the Damages Judgment.  Nothing in this opinion is an indication of how I would, if adjudicating evidence, rule on the dischargeability of the Judgment.

### #

Copies furnished to:

Paul Orshan, Esq.

Jeffrey Kucera, Esq.

*Attorney Orshan shall serve a conformed copy of this order upon all parties in interest and shall file a Certificate of Service of same with the Clerk of the Court.*